DENT *v.* ALEXANDER.

4-9381                                                235 S. W. 2d 953

Opinion delivered January 29, 1951.

*Batchelor & Batchelor,* for appellant.

*Partain, Agee & Partain* and *Wilson & Starbird,* for appellee.

HOLT, J.   Appellants instituted this suit against appellees seeking injunctive relief.   They alleged, in effect, that appellees diverted overflow or surface water from their own lands into drainage ditches, accelerated the flow of the water, and caused it to flow upon the lands of appellants in an unnatural channel and in increased volume.

More specifically, they alleged that they "without the consent of plaintiffs (appellants) or either of them and over the protest of plaintiffs, cut a ditch across

. . . a natural barrier of high ground . . . to a depth of three or four feet and also deepened or cut a ditch in an easterly direction across the Southeast Quarter . . . toward the land of plaintiff, Vivian Cazort Dent, (appellant) and thereby directed the surface water off the lands of defendants (appellees) together with another large body of land across and onto the lands owned by plaintiff, Vivian Cazort Dent, and being cultivated by plaintiff, Vinsett. Plaintiffs state that said wrongful diversion of surface water, from its regular, long established, and natural water course onto the lands of plaintiff, Vivian Cazort Dent, and the crops and cultivated lands of Fred Vinsett, will cause continuing overflow, great and irreparable damage'' and a continuing nuisance.

They prayed that the ditches constructed by appellees be declared nuisances, that same be ''abated and abolished'' and that appellees ''be restrained from reopening them and directly or indirectly discharging the surface water onto plaintiffs' lands'' and for all other equitable relief. No monetary damages were sought.

Appellees interposed a general denial.

From a decree dismissing appellants' complaint for want of equity comes this appeal.

The record reflects that appellant, Vivian Dent, owns approximately 560 acres of land in sections 12 and 13, township 8 north, range 31 west in Crawford County, near the Arkansas River. On this land is a depression known as Rose Lake covering from two to five hundred acres, depending upon the rain fall. Water drains into this lake from about 2,000 acres of low, flat, Arkansas River bottom land, which embraces all the lands involved here.

Appellee, Willis Arnold, owns the southwest quarter of section 14, and appellee, J. F. Alexander, owns all of the southeast quarter of said section except 20 acres in the northwest corner. Drainage from appellees' tracts is northeasterly for approximately one mile into Rose.

Lake. The elevation of appellees' lands is approximately five feet above the water level of Rose Lake.

A large number of witnesses were presented by the parties in this case, and after a patient hearing, the Chancellor, on conflicting testimony, made the following fact findings: "In every case, it is necessary that the plaintiff make out a case by a fair preponderance of the evidence. The engineers' surveys, of course, show that the area that they complain of drains towards Rose Lake. Aside from that, I think the evidence is sufficient to show that that is true. . . . In a flat country, like that, a person can look over it and say, 'Well it drains this way,' and look at it from another point and say, 'no, it drains that way.' What is called a ridge may be a little swell or contour a foot or two higher than it is some place else. Maybe looking across the thing at a distance, it will be perfectly flat, but it is that much higher, and, most of us, at least, are not trained well enough to judge those matters, without a survey. If we had nothing else, a survey would determine this litigation. If it were true that by a little ditch that runs out west of the Arnold line a little way the water would be caught from a hundred and twenty or 140 acres—if it did so—; if all of it were diverted from going in a southwesterly direction and if all of it would go into Rose Lake, considering the territory that supplies Rose Lake with water, I doubt if there ever would be a time when it would raise it one inch. The territory just isn't sufficient for it to do that. Of course, when you see water that is accumulated in a ditch three or four feet wide and four or five feet deep, that comes pretty fast and looks muddy, it looks like it is doing lots of damage, but when you spread it out over a good large area, it doesn't amount to anything. The complaint will be dismissed for want of equity."

Without attempting to detail the testimony, after reviewing it all, we have concluded that the findings of the Chancellor are not against the preponderance of the evidence.

Appellants say: "Should this court determine that the finding of the Chancellor is not against the pre-

ponderance of the evidence, the fact remains that the flow of surface water from the land of appellees has been accelerated and caused to flow into the appellant's land in greatly increased quantities."

As indicated, the Chancellor found that any accelerated flow of the natural drainage into Rose Lake did not warrant equity intervention.

As one witness (who was well acquainted with the area, had lived in Crawford County for 46 years, and a member of the Levee Board for 25 years), testified: "The water carried by the ditches in question would not make any appreciable contribution to the area of the lake. I don't think it would be a drop in the bucket. It wouldn't raise it any I don't think."

A well established rule is that as against overflow or surface waters, "a land owner has the right to defend himself as against a common enemy, without rendering himself liable for damages, unless he unnecessarily injures or damages another for his own protection," *Leader* v. *Mathews*, 192 Ark. 1049, 95 S. W. 2d 1138, or as expressed in *Bohn* v. *Salt Lake City*, 79 Utah 121, 8 Pac. 2d 591, 81 A. L. R. 256: "A landowner is under no duty to receive upon his land surface water from the adjacent property, but in the use or improvement of it he may repel such water at his boundary. . . . A landowner incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use or improve his land in such a way as to increase the total volume of surface water which flows from it to adjacent property, or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property."

In the present case, no damages have been sought, and the preponderance of the testimony shows, as the trial court found, that appellants have not been substantially or unnecessarily damaged or injured by any accelerated flow of the surface waters, in the circum-

stances here. The test, as just quoted, is not whether the flow of the waters has been accelerated, but whether such acceleration injured or damaged the lands of appellants.

Finding no error, the decree is affirmed.

GRIFFIN SMITH, Chief Justice, concurs.