REDDMANN *v.* REDDMANN.

255 S. W. 2d 668

Opinion delivered March 9, 1953.

728

*L. A. McLin,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

ROBINSON, J. Appellants filed this suit, alleging that appellees had wrongfully constructed certain levees which blocked the natural drainage of the area involved, and prayed for a mandatory injunction requiring the removal of such alleged obstructions. The defendants denied impeding the natural drainage and pleaded the statute of limitations. The chancellor held there had been no stoppage of the natural drainage by defendants.

The transcript contains a thorough and exhaustive opinion of the chancellor, showing that all the facts in the case were taken into consideration, and, since after an examination of the record, we agree with the conclusion reached by the chancellor, we set out here the parts of the opinion necessary to an understanding of the case:

"The plaintiff, Jones, is the owner of a tract of land in Section Twenty-one directly south of the 160-acre tract belonging to the defendants in Section Twenty-one. The plaintiff, Brinkerhoff, is the owner of 160 acres of land south and southeast of the 80-acre tract of land owned by the defendants and located in Section Twenty-two. All other lands involved are to the east and southeast of the defendants' lands.

"The defendants have owned and farmed to rice, since 1937, the 160-acre tract of land located in Section Twenty-one. Immediately east of the 160-acre tract, but in Section Twenty-two, is a more recently acquired property of the defendants, the same being known as the Meister land.

"All lands involved in this litigation are west of Crowley's Ridge. What is known as Town Creek, Pat

Denver Creek, and Ainsworth Creek, have, for many years, drained a portion of Crowley's Ridge, and some distance east of the lands in question have converged and continued west for some distance as a well defined stream. It appears from the testimony that when this stream reached the flat lands west of the ridge, it left its well defined banks and spread out over the flat lands, following the lowest portions thereof in a generally westerly direction, until they reached L'Anguille River.

"It is conceded that about the year 1910, Drainage District Number 3, known also as L'Anguille Drainage District, was organized, and certain ditches constructed west of L'Anguille River. L'Anguille River itself became a part of this drainage system, and a ditch was constructed, presumably straightening and widening that river.

"About 1918 a lateral ditch in this drainage district was constructed, and this ditch intercepted the creek coming from the ridge at a point about 220 yards east of its western terminus. This lateral ditch was constructed to flow due north and with the fall toward the north, so as to drain the waters into an east and west lateral which ran directly into L'Anguille River. There was also a lateral coming from the north of the east and west lateral forming a 'T', thus leading to the naming of the three laterals mentioned as one lateral under the name of 'T-Lateral'.

"The testimony shows that when the T-lateral was constructed the end of Town Creek, 220 yards west of the beginning of the T-lateral, was filled in, but that Mr. Meister, who then owned the 80-acre tract in Section Twenty-two now belonging to the defendants, removed that obstruction so that as the flood waters receded, they would run back into Town Creek; thence northeast into the T-lateral, and by that system of drainage into L'Anguille River.

"The defendants constructed a dike, or levee, on the east and south sides of the 160-acre tract of land and used those levees, or dikes, since 1937. After acquiring

the 80-acre tract to the east, the defendants constructed a levee on the east and south sides of that tract and built another levee on the east side of the 160-acre tract which, together with the levee that was already there, has since been used as a flume.

"It is the contention of the plaintiffs that there is a well defined water course running in a southeasterly direction from the mouth of Town Creek to a point near the south line of the 80-acre tract; thence in practically a due westerly direction to a point in the southeast corner of the 160-acre tract; thence in a northwesterly direction across the entire 160-acre tract to the northwest corner thereof, and from there in a northwesterly direction to L'Anguille River.

"The defendants deny that such a water course exists, or ever existed, and, in addition thereto, plead the three-year statute of limitations. From the view taken by the court, it is unnecessary to discuss the statute of limitations.

"The plaintiffs in their brief, notwithstanding the usual and commendable enthusiasm in the interest of their cause, have been unusually frank in their statements. For instance, they call attention to the fact that it is conceded by all witnesses that Town Creek and its tributaries drain a portion of Crowley's Ridge and lands west thereof through a well defined channel, and that said well defined channel extends west 220 yards past the intersection of the south end of the T-lateral and Town Creek. They then state:

" 'From this point to the northwest corner of the northeast quarter of said Section Twenty-one there is no well defined ditch with banks, but after reaching said northwest corner of the northeast quarter of Section Twenty-one there is a well defined channel with ditch and banks northwest, then southwest, into L'Anguille River.'

"Thus it will be seen from the plaintiffs' own statement that they do not contend that there is a well defined channel over and across any part of the defendants'

land, but that the well defined channel disappears east of the defendants' land and does not reappear until after it passes out the northwest corner of defendants' lands.

"This is substantiated by plaintiffs' own witness, Darrell W. Fox, a surveyor who surveyed the lands in question and filed as Exhibit '1' to his deposition a plat thereof. At page 8 of the transcript, Mr. Fox testified that he showed a 'creek, ditch or slough' with double lines. It is significant to note that, in tracing the so-called water course across the defendants' lands, he used only a single line throughout the entire length thereof. And at page 54 of the transcript, he described the so-called water course as a 'sway.' Again, at page 9, he testified that the land in question was practically flat.

"Much stress is placed upon the fact by the plaintiffs that the witness, Fox, testified that water was running across defendants' land at the time his survey was made, and they further stress the fact that the defendant, Reddmann, admitted this. Nowhere in the record, insofar as the court's investigation has disclosed, is it shown just when this survey was made; that is, what time of the year. This, of course, would have quite a bearing in this connection. It is significant, however, to note that the engineer or surveyor's plat was dated March 3rd, 1950.

"Again, in the plaintiffs' brief it is stated that, from the proof and plats filed, there seems to be two sources of water coming from the east: one, Town Creek and its tributaries, being carried by a well defined ditch to a point 220 yards west of the south end of the T-lateral and there 'flattening out' over a depression from one hundred to four hundred feet wide, and for a distance of five thousand feet, at which point it again gets in a well defined ditch and flows from there to L'Anguille River; the other source they say originated on the Bob Lamb and John Gant lands, which are east of the Brinkerhoff land. They say that this water, part of which may come from Town Creek, is gathered in a well defined channel on the Gant and Lamb property

and carried south to Highway 14, where it connects with Ditch Number 10 extended south by means of a culvert under the highway. It appears that, because of the fact that Ditch Number 10 is so grown up, it only carried, after big rains, a portion of this Gant and Lamb water, and the balance of it is forced west on to the Brinkerhoff and Jones land.

"It is quite apparent to the court that the purpose of the construction and creation of the T-lateral and of Ditch Number 10 was to carry the water of Town Creek. Of course, as long as the water is within the confines of the banks of the creek and lateral, it is the stream of water leading to L'Anguille River. When it overflows its banks, the water coming therefrom is overflow water, or flood water, or excessive rain water, as it is referred to throughout the plaintiffs' brief and reply brief. It is not the duty of a landowner to provide a means by which flood water may be carried over and across his lands.

"Many cases of a similar nature appear in the official reports of our Supreme Court, and quite a few cases are cited by both parties to this litigation in their briefs. The court is of the opinion, however, that this case is controlled by the ruling laid down in the case of *Leader* v. *Mathews*, 192 Ark. 1049, 95 S. W. 2d 1138, and referred to in the more recent case of *Dent* v. *Alexander*, 218 Ark. 277, 235 S. W. 2d 953, wherein it was said:

" 'A landowner has the right to defend himself as against a common enemy without rendering himself liable for damages, unless he *unnecessarily* injures or damages another for his own protection. A landowner is under no duty to receive upon his land surface water from the adjacent property, but in the use or improvement of it he may repel such water at his boundary.'

"That the defendants have used the 160-acre tract of land as a rice farm for some fourteen or fifteen years is unquestioned. And the use of the very part of the land claimed to be a water course for such purpose absolutely destroys the contention that it is a natural water

course. And the most that can be said is that in the case of overflows, or excessive rains, the water naturally follows the contour of the land, and if unobstructed would recede over this 'sway,' as indicated by plaintiffs' witness.

"There is yet another reason why the plaintiffs should not be permitted to prevail, and that is shown by the supplement to the plat filed by the witness, Fox. In this plat he projects the so-called water course from the northwest corner of defendants' lands over and across sections 16 and 17, and into L'Anguille River. This plat shows that there are two obstructions across this so-called water course in section 16.

"Apparently there has been no maintenance work done in the drainage district in question for a period of some thirty-four years, and it can be readily understood that the system has deteriorated to such an extent that flood waters inundated all of the property in question more frequently than it was ever anticipated."

The decree is correct, and is therefore affirmed.