HAVLIK v. FREEMAN.

4-7869                                        218 S. W. 2d 364

Opinion delivered March 7, 1949.

Rehearing denied April 4, 1949.

*Wendell Utley* and *Henry B. Whitley,* for appellant.

*Harry Crumpler,* for appellee.

FRANK G. SMITH, J. Appellant is the owner of the record title to the NW¼ of lot 17, block X of the original survey of the City of Magnolia, and appellee has the record title to the SW¼ of that lot, and this litigation involves the correct location of the boundary line between these tracts of land. The parties claim from a common source of title. G. A. Dunn, once the owner of both lots, improved both of them by building a house on each. He built a garage near the rear, and north of the house located on the SW¼.

Entrance to the two lots was secured from South Jackson Street, which forms the west boundary of both lots, and there were parallel driveways from the street to each lot, and between these driveways there was a large oak tree.

Appellant purchased the NW¼ of the lot on April 22, 1944, from Mrs. J. E. Bussey, the then owner, who acquired her title from her brother, J. H. Roper, in 1939 or 1940, she not being certain as to the date. According to the deeds under which the parties to this litigation claim title, each had a frontage of 72 feet on South Jackson Street. After purchasing his lot, appellant concluded that appellee was using as a driveway a portion of his lot, and had a survey made of the lots, the accuracy of which is not seriously questioned. According to that survey appellee had encroached on appellant's lot to the extent of about 4½ feet, and appellant brought this suit to enjoin the use of this 4½ foot strip, and to quiet his title thereto.

Appellee filed an answer in which he claimed title to the lot in question as a result of an agreement as to the boundary line of the lots, between himself and Roper and by adverse possession and use thereof.

On this issue appellee's testimony was made to the following effect: Roper had acquired his title by deed dated February 27, 1934, and appellee acquired his title, April 7, 1938. This suit was filed May 30, 1945. When appellee purchased his lot he inquired of his grantor where the line between the lots was located, and was told

that his grantor did not know exactly where the line was. The same inquiry made of Roper elicited the same response. According to appellee, neither party wished to incur the expense of a survey, and a line was agreed upon. This agreement, according to the testimony of appellee, which was confirmed by Roper, was to the following effect: There was standing a growing, large oak tree in the center and separating two well defined driveways leading to the garages of the respective owners from South Jackson Street, the center of said tree being intersected by an extended line from the north wall of appellee's garage, and appellee and Roper agreed that the boundary line should run from the center of said tree to the north wall of appellee's garage. Appellee and his tenants have since occupied the strip in question as a driveway and have maintained it as such by placing gravel thereon. The other driveway on the north side of the tree has been occupied and maintained by the owner of the NW¼ of the lot.

Dunn, the predecessor in title of all parties, built a garage for the use of the SW¼, fifteen years before the suit was filed. The survey showed that this garage extended over onto the NW corner of the lot. There was also a concrete floor on the north side of the residence on the SW¼, which would have to be removed if the line between the lots was moved south 4½ feet in accordance with the survey, and appellee would be deprived of the use of the driveway leading to his garage. Appellee testified, and the testimony appears to be undisputed, that since April 7, 1938, when he acquired his title, and for a period of time unknown to him, prior thereto, there have been two cuts in the curb of the street, one for the driveway on the NW¼ and the other for the driveway on the SW¼.

In order to better understand the testimony, the Chancellor viewed the property and announced this finding of fact: "That considering the testimony in this case on the question of adverse possession, the greater weight of the testimony establishes adverse holding for the statutory period to the line as being in line with the

north line of the garage and the center of the oak tree. From the facts in this case, and especially by looking at both driveways, it is clear that each driveway is separate and distinct and has been used by the respective parties, and by consent of each party, the center of the oak tree has been used as the dividing line between the two driveways as the property line. The testimony concerning the agreement previously entered into between the prior owners of the property, clearly appears, and the testimony on adverse holding to the agreed line for more than seven years before the filing of the suit.''

This finding of fact by the court, which was incorporated in the decree, is sustained by the testimony of Mrs. Bussey, who was appellant's immediate grantor, and who had purchased from Roper, her brother. She testified that she did not know the location of the line between the lots, and was unaware that appellee's garage extended 4½ feet on her lot, and that she never at any time claimed the garage as she supposed it belonged to appellee. She decided to build a new garage on her property, and to save lumber she asked and was given permission to ''tie onto the north wall'' of appellee's garage.

It has long been the law where the correct location of a dividing line is unknown, the parties in interest may agree as to its location. In the case of *Miller* v. *Farmers' Bank & Trs. Co.*, 104 Ark. 99, 148 S. W. 513, the following statement of the law is made: ''Where there is doubt or uncertainty or a dispute as to the true location of a boundary line, the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them, although the possession is not for the full statutory period.''

Appellant insists that Roper was without authority to make this agreement for the reason that the property was then under a mortgage and in support of this contention cites the case of *Baker-Matthews Lbr. Co.* v. *Bank of Lepanto*, 170 Ark. 1146, 268 S. W. 995, where it was held that a mortgagor could make no contract re-

specting the mortgaged property which would bind the mortgagee or prejudice his rights. While the agreement fixing the boundary was subject to the rights of the mortgagee, Roper was nevertheless the owner of the land and his agreement was binding subject to the rights of the mortgagee. But the mortgage has been paid and discharged and there has been no prejudice of the mortgagee's rights.

The decree from which is this appeal dismissing appellant's suit is sustained by the testimony and is therefore affirmed.