MR. AND MRS. HOMER RABJOHN, MR. AND MRS. JACK B. DeLILLE, MR. AND MRS. JOE L. COOPER v. LLOYD ASHCRAFT AND CYNTHIA A. ASHCRAFT

5-5879                                    480 S.W. 2d 138

Opinion delivered May 15, 1972

*Lloyd R. Haynes,* for appellants.

*Carpenter, Finch & McArthur,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal arises from a decree settling a boundary dispute. Appellants contend that appellees had not acquired title to the contested strip by adverse possession, that appellees had slept too long on whatever rights they had and that appellants had gained title by adverse possession, if not otherwise.

Appellees acquired title to the east four acres of the SE¼ SE¼ SW¼ of Section 2, T 1 S, R 13 W by deed dated September 13, 1955. Testimony that they had been in possession under a contract to purchase since 1947 is not disputed. The area in dispute lies along the western boundary of this tract. It consists of a strip approximately 8.4 feet wide running the entire length of this boundary. A survey made for appellees discloses that their tract contains more than four acres if the disputed strip is within their boundaries. The chancery court's decree found that appellees' contention as to the location of the boundary was sustained by the evidence that the boundary between appellees' property and that of the respective appellants, each of whom owns a tract lying immediately west of the Ashcraft land, was located along an old fence line as portrayed on the plat of the survey made for appellees. In the chancellor's findings at the conclusion of the trial, he specifically found that appellant's predecessor in title built the fence, regarding it as the property line and that subsequent conveyors of the properties regarded the fence line as the property line, so that the boundary had become fixed long before either Rabjohn or DeLille purchased the respective tracts they own.

The surveyor for appellees, Orson Jewell, testified that when he made the survey on April 2, 1970, he found an old fence line 264 feet west of the eastern boundary of the Ashcraft tract, evidenced by a few old posts and some strands of barbed wire. Jewell said that the old fence posts with barbed wire lay along the strip where the Cooper property and the Ashcraft property adjoined. None of the posts was along either the Rabjohn or the DeLille property. He did find an old crosstie in line with the fence posts and barbed wire implanted in the ground at the extreme southern boundary with about five feet

of the post above ground level. He could not recall any fence attached to it, but assumed that it was a fence post. He found iron pins where chain link fences had been placed by Rabjohn and DeLille, approximately 8.5 feet east of the line the surveyor designated as the old fence line.

George Fox testified that he had owned a six-acre tract which included the lands of all the appellants until he sold it to Otis Conway around 1950. Fox said that the Ashcraft tract was owned by a man named Holland when Fox owned the six acres west of it. There was no fence between the two tracts when Fox bought the six acres, but he built a wire fence, using a tape to measure distances. According to Fox, Holland had established corners marked by pins in the ground before the fence was erected, and he put the fence post near the pin on Holland's southwest corner. He said that the fence, consisting partially of barbed wire and partially of hog wire, was still there when he left the property. Fox also testified that during his ownership he discovered that some surveyors had located the property line a few feet west of the fence. He reported this fact to Ashcraft and gave his consent to movement of the fence to this new line, but said that the fence was in its original location when he left the property and that, as far as he knew, it was never moved.

Otis Conway testified that he bought the six-acre tract in 1953 and sold 4½ acres to Joe Mann in 1962 and the balance to appellant DeLille in 1969. He confirmed Fox's testimony that the fence was there when he purchased the property and that Ashcraft mowed grass up to the fence. He also testified that there was no dispute about the line until Mann had the property surveyed in 1962. Conway said that he showed both the survey line and the old fence line to DeLille when the latter purchased the tract he now owns. Conway said that the fence was falling down at that time, and was in bad shape when he made the sale to Mann. He stated that he had maintained the area adjacent to the fence, but never went over the fence. Conway regarded the fence as the boundary up until 1962 and told Mann so at the time of the sale to him.

Ashcraft testified that the fence was in place when he first moved onto the property he purchased from Holland, and that he subsequently maintained the fence. He said that he had set the crossties on the line and nailed the fence to them. He claimed that the fence was still there when DeLille purchased his property and that De-Lille removed the fence and built his own chain link fence. Ashcraft said that the fence line was first questioned after Mann had purchased the property to the west and new survey "stobs" were put down. He said that no owner objected to the fence as the property line, prior to occupancy by Rabjohn, Cooper and DeLille.

Mann described the fence as a "drift fence." He said that there was a wire of some kind there, but that he stacked lumber and built a road and a water line into the disputed portion and tore down the old fence in 1962 without objection by Ashcraft. Rabjohn testified that when he purchased his property in 1965, the eastern boundary was covered with growth, and that the old fence was there but not standing. He said that the posts were rotted and lying on the ground and part of the wire was completely absent. His fence has been in place for six years. Later Ashcraft told him that the fence was on the Ashcraft property.

DeLille found one strand of wire running from a pole into rocks and underbrush when he purchased his tract in 1969. He said that the only wire he found was in two little muscadine vines. He admitted that before his purchase Conway told him that Fox had built the fence. He testified that Conway said he owned the fence. When DeLille walked around the property before his purchase, he found a crosstie near one corner of the property and another near his northern boundary.

Appellants contend that seven years had not elapsed between the date of appellees' deed in 1955 and the filing of the plat of Mann's survey in 1962 and that in his testimony Ashcraft never stated that he intended to claim any land other "than what he actually thought was his." For these reasons, appellants contend that Ashcraft failed to establish adverse possession. Even if we could say that

appellants were correct in these contentions, they overlook the fact that the chancellor's decree is not based upon Ashcraft's adverse possession, in spite of the fact that there was considerable evidence which might have supported such a finding. It seems clear to us that the decree is based upon a finding that the George Fox fence constituted an agreed boundary or boundary by acquiescence.

The proprietors of adjacent lands may establish a binding arbitrary boundary line, by agreement, which may be parol. *Vaughn* v. *Chandler*, 237 Ark. 214, 372 S.W. 2d 213; *Deidrich* v. *Simmons*, 75 Ark. 400, 87 S.W. 649. Such an agreement becomes binding if the location of the true line is in doubt or dispute, and the parties enter into possession pursuant to it, even though their possession does not extend for the full statutory period of seven years. *Vaughn* v. *Chandler*, supra; *Moeller* v. *Graves*, 236 Ark. 583, 367 S.W. 2d 426; *Robinson* v. *Gaylord*, 182 Ark. 849, 33 S.W. 2d 710. The agreement need not be express, but it may be inferred from long-continued acquiescence of the parties and occupation according to such line, or from other actions of the parties. *Kittler* v. *Phillips*, 246 Ark. 233, 437 S.W. 2d 455; *Barnes* v. *Young*, 238 Ark. 484, 382 S.W. 2d 580; *Vaughn* v. *Chandler*, supra; *Robinson* v. *Gaylord*, supra; *Deidrich* v. *Simmons*, supra. Quite apart from the inference of some parol agreement, a boundary may also be established by adjoining owners by acquiescence in a clearly established line as the boundary over a period in excess of seven years, whether preceded by a dispute or uncertainty as to the line or not and without the necessity of adverse user to the line. *Vaughn* v. *Chandler*, supra; *Seidenstricker* v. *Holtzendorff*, 214 Ark. 644, 217 S.W. 2d 836; *Morton* v. *Hall*, 239 Ark. 1094, 396 S.W. 2d 830. See also, *Kittler* v. *Phillips*, supra; *Clay* v. *Dodd*, 238 Ark. 604, 383 S.W. 2d 504; 12 Am. Jur. 2d 621, Boundaries, § 86. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Palmer* v. *Nelson*, 235 Ark. 702, 361 S.W. 2d 641. When the adjoining owners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long

period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. *Seidenstricker* v. *Hiltzendorff*, supra; *Tull* v. *Ashcraft*, 231 Ark. 928, 333 S.W. 2d 490. See also, *Gregory* v. *Jones*, 212 Ark. 443, 206 S.W. 2d 18; *Harris* v. *E. B. Mooney, Inc.*, 211 Ark. 61, 199 S.W. 2d 319; *Robinson* v. *Gaylord*, supra; 11 C.J.S. 656, Boundaries, § 84.

Since the location of a boundary is a disputed question of fact, we must affirm the decree, unless the chancellor's finding is against the preponderance of the evidence. *Kittler* v. *Phillips*, supra. We cannot say that it is in this case.

The fact that appellees were in possession under a contract of sale until they received a deed does not diminish the effect of the mutual acquiescence of appellees on the one hand and Fox and Conway on the other, even though the Ashcrafts' acquiescence might not have been binding on their vendor.[1] The contract of sale created an equitable estate in the Ashcrafts. Holland was only a constructive trustee holding the naked legal title for the Ashcrafts, and was required to convey it to them upon payment of the purchase price. *McKim* v. *McLiney*, 250 Ark. 423, 465 S.W. 2d 911. Their actions while in possession of the tract under the contract, insofar as the parties here are concerned, were as binding as if they had held the legal, as well as the equitable, title.

We find no merit in appellants' contention (relying upon *Riley* v. *Norman, Admr.*, 39 Ark. 158) that appellees slept on their rights too long. This, we take it, is an effort to invoke the doctrine of laches although the question involved in *Riley* had to do with the statute of limitations. Laches does not come into play prior to the running of the statute of limitations, in the absence of some intervening equity which requires application of the doctrine. *Vesper* v. *Woolsey*, 231 Ark. 782, 332 S.W. 2d 602. Cooper did not plead laches. He is in no position to assert error in this respect. See *McKim* v. *McLiney*,

---

[1] See *Havlik* v. *Freeman*, 214 Ark. 761, 218 S.W. 2d 364.

supra; *T. M. Dover Mercantile Co.* v. *Dover*, 187 Ark. 859, 62 S.W. 2d 971. While Rabjohn and DeLille pleaded both defenses, DeLille did not acquire his property until 1969, and Rabjohn purchased his tract in February or March of 1965. The Rabjohn fence was erected in May 1965, and the DeLille fence was erected after June of 1969. Ashcraft objected to each soon after the respective fences were erected. His suit was filed in April 1970.

Laches depends upon more than a mere lapse of time. We find no evidence on the part of appellants showing how appellees' delay in bringing suit worked to the disadvantage of appellants by any change of circumstances or relations of the parties or caused any loss of evidence so that the enforcement of the claim asserted in this suit became inequitable. On this state of the record we find no reason for a bar for laches. *McKim* v. *McLiney,* supra.

We likewise find no merit in appellants' argument that appellees were barred by adverse possession beginning with the platting of a subdivision by Mann, the stacking of lumber and placing water lines and a roadway onto the strip by Mann and the erection of the fences by Rabjohn and DeLille. We find no indication that appellants raised this defense in the trial court. Even if it were not too late to raise this defense on appeal, we could not say that appellants had met their burden of proving it by a preponderance of the evidence.

The decree is affirmed.