Marilyn Ladell FIELDS *v.* William Carroll GRIFFEN

CA 97-82                                         959 S.W.2d 759

Court of Appeals of Arkansas
Division II
Opinion delivered January 28, 1998

*Dunham & Faught, P.A.*, by: *James Dunham*, for appellant.

*David L. Eddy*, for appellee.

JOHN E. JENNINGS, Judge. This case involves a boundary-line dispute. Marilyn Ladell Fields appeals from an order of the Pope County Chancery Court which found a boundary line by agreement between her property and that of appellee William Carroll Griffen, the adjoining landowner to the south. She argues that the trial court erred in finding a boundary-line agreement. We agree.

Although the facts of this case are rather complicated, the issue essentially involves adjoining landowners who were unaware that their respective warranty deeds contained legal descriptions that overlapped as to a strip roughly eighty feet wide along the boundary. Appellee acquired the south tract in 1987. He purchased the land from Thompson Industries. He testified that at the time of purchase he walked the property with Harry Scott, who runs Thompson Industries, and was shown a steel stake near the Highway 7 frontage. A fence ran from there across the property to a round pipe, and appellee was told that the fence and the pipe and stake marked the boundary. The land was hilly and had big oak trees. The lower, southernmost part of his tract had undergone excavation. Appellee began more excavation in April 1987. Appellee had trees logged off the uphill, northern part of his tract, instructing the loggers to "cut trees to the north line, and by that I mean where the fence row was and in between the stake on the front and the back."

In 1989, appellant and her husband, Buddy Fields, now deceased, acquired the adjoining north tract. Appellee and Buddy Fields were friends, and appellee had suggested to Buddy that he purchase the north tract. Appellee and Buddy discussed their wishes to develop their respective tracts from time to time. In December 1992 Buddy Fields contacted his friend, appellee, to tell him that he had made arrangements to excavate and sell dirt from the north tract and to see if appellee wished to do the same

on the south. The two men met on the property along with the excavators. Buddy Fields handled the transaction, and indicated where the property line was to the excavators. There were remnants of an old fence. A line was strung from an existing pipe in the ground across the property to a stake, and the excavators used this line as a reference for the removal of dirt from both tracts. Appellee testified that there was no confusion or dispute regarding the boundary line until after Buddy's death in January 1995, when appellant had a survey done and the overlapping eighty-foot strip along the boundary was discovered. Appellant erected a fence on the southern edge of the overlap, and appellee filed suit to quiet title to the disputed strip. The chancellor found that "there was an agreed boundary between Buddy Fields and [appellee]."

In order for there to be a valid boundary-line agreement, certain factors must be present: (1) there must be an uncertainty or dispute about the boundary line; (2) the agreement must be between the adjoining landowners; (3) the line fixed by the agreement must be definite and certain; and (4) there must be possession following the agreement. *Jones v. Seward*, 265 Ark. 225, 578 S.W.2d 16 (1979); *Bryson v. Dillon*, 244 Ark. 726, 427 S.W.2d 3 (1968). With regard to the first element, all the evidence in the case at bar indicates that there was no dispute between the parties as to the boundary line until after the death of Buddy Fields. While the overlapping deeds might have created uncertainty, the parties were not aware of any uncertainty nor was there any dispute at the time of the purported agreement between Buddy Fields and appellee. It has been held that only where the true line is unknown, or is difficult of ascertainment, and the parties establish the line to settle a disputed and vexatious question as to the boundary line between them, is the agreement binding. *Randleman v. Taylor*, 94 Ark. 511, 127 S.W. 723 (1910). When numerous conflicting surveys gave rise to uncertainty as to the division line and created dispute and controversy, it was held that adjoining landowners could orally agree upon a division line. *Furqueron v. Jones*, 186 Ark. 155, 52 S.W.2d 962 (1932). In the case at bar the purported agreement between Buddy Fields and appellee was not made to settle any dispute or uncertainty; the uncer-

tainty created by the overlapping legal descriptions in their respective deeds had not been discovered.

■ Appellant also argues that the trial court erred in not quieting title in her favor to the disputed strip. When the chancellor found that a boundary line was established by agreement, he declined to address the other issues presented by both parties at trial, including adverse possession and acquiescence. Because we reverse on the finding that there was an agreed boundary, we remand for the chancellor to address the parties' other issues.

Reversed and remanded.

AREY and STROUD, JJ., agree.