Ode WARD *v.* Mike ADAMS, *et al.*

CA 98-754                                    989 S.W.2d 550

Court of Appeals of Arkansas
Division I
Opinion delivered May 5, 1999

*Lyons, Emerson & Cone, P.L.C.*, by: *Jim Lyons*, for appellants.

*Michael R. Gott, P.A.*, for appellees.

JOHN B. ROBBINS, Chief Judge. This case concerns a boundary-line dispute. Appellant Ode Ward appeals the order of a Craighead County chancellor that dismissed Ward's 1996 complaint against appellees Mike Adams, his wife Rebecca Adams, and Buddy Frank Smith, which asserted that Ward had acquired ownership of a disputed thirty-foot strip of property by acquiescence or by adverse possession. Appellant argues that this finding of the chancellor was clearly erroneous. We disagree and affirm.

Chancery cases are reviewed de novo on appeal. *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). We will not reverse a chancellor's finding of fact in a boundary line dispute case unless the finding is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id*. The location of a boundary line is a question of fact. *Id*. In reviewing a chancery court's findings of fact, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be

accorded their testimony. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

The undisputed facts in this case indicated that Ms. Henson, Mr. Staggs, and Mr. Ward owned adjacent parcels of land, and that Ms. Henson had the most northerly of the tracts. Just to the south was Mr. Staggs' property, and just south of Mr. Staggs was the land owned by appellant Ward. Directly to the east of the eastern boundary lines of these three properties was the land belonging to the appellees. Appellees grew wheat on their land; appellant grew cotton on his. The question in this case pertains to the location of their common boundary line. Aerial photographs of this farm land taken yearly by the Agriculture and Soil Conservation Service were introduced indicating a relatively straight line from north to south along the three properties that abutted the land of appellees. Appellees contended that the big oak tree, with which all parties were familiar, was located thirty feet inside their western boundary line. Appellant contended that an old fence line and four stumps, which were essentially in line with the big oak tree, marked the boundary. The difference between these two contentions was a thirty-feet-wide strip of land. The most recent survey prepared indicated that the appellees' position was correct.

There were scores of witnesses at the hearing on this case. Appellee Mike Adams and many of the people who had farmed the land for appellees testified that everyone recognized an old fence line that had long been gone and a pecan tree in Ms. Henson's yard as being on the boundary line. The land had been farmed for many, many years following this line, according to their testimony. The same type of testimony was elicited from appellant and his witnesses who claimed that Mr. Adams had encroached upon their land, and that the established boundary was in line with the big oak tree, that being at the edge of Mr. Adams's field. This essentially came down to a question of credibility and comparison of surveys. Weighing the evidence and giving the witnesses whatever credibility determinations they deserved, we cannot say that the chancellor erred in dismissing appellant's complaint.

*Adverse Possession*

■    To establish title by adverse possession, the one claiming title bears the burden to prove that he had been in possession of the property continuously for more than seven years and that his possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. *Moses v. Dautartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996). The proof required as to the extent of possession and dominion may vary according to the location and character of the land. *Id*. Whether possession is adverse to the true owner is a question of fact. *Id*. We need not discuss this point with any length because it is abundantly clear that there was no asserted adverse use for the required seven years.

*Acquiescence*

■    The case-law principles that govern whether a boundary line has been established by acquiescence are well settled. Whenever adjoining landowners tacitly accept a fence line and thus apparently consent to that as their property line, it becomes the boundary by acquiescence. *Walker v. Walker*, 8 Ark. App. 297, 651 S.W.2d 116 (1983). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 927 (1978); *Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993). The period of acquiescence need not last for a specific length of time, but it must be for "many years" or "a long period of time" sufficient to sustain the inference that there has been an agreement concerning the location of the boundary line. *See Seidenstricker v. Holtzendorff*, 214 Ark. 644, 217 S.W.2d 836 (1949). This period varies with the facts of each case, just as all circumstantial evidence does, unlike the seven years required to take land by adverse possession, which is a statute of limitations for commencement of an action to recover land adversely possessed. *See* Ark. Code Ann. § 18-61-101(a) (1987). Moreover, establishment of a boundary line by acquiescence does not require adverse possession of the land by one party. *See Morton v. Hall*, 239 Ark. 1094, 396 S.W.2d 830 (1965). When the adjoining landowners occupy their respec-

tive premises up to the line they acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus acquiesced in is not the true boundary, although it may not be. *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972). A boundary line may be established by acquiescence whether or not preceded by a dispute or uncertainty as to the boundary line. *Id.* Where a boundary line by acquiescence can be inferred from other facts presented in a particular case, a fence line, whatever its condition or location, is merely the visible means by which the acquiesced boundary line is located. *See Camp v. Liberatore*, 1 Ark. App. 300, 615 S.W.2d 401 (1981). While appellant makes a better case for acquiescence than adverse possession, we cannot say that the chancellor erred in finding that Mr. Ward failed in carrying his burden of proof to show that there was a boundary by acquiescence.

Mr. Adams and his witnesses testified that the post that marked the true line had been moved over thirty feet to the big oak tree in 1995. He contended that the true line was thirty feet west of the big oak tree and in line with a pecan tree in the yard of Ms. Henson. One farmer in particular testified that in 1967, when he plowed the field for appellee's predecessor in title, he had to plow around the oak tree, and he remembered that the oak tree was between the seventh and tenth row in from the edge of the field. Witness after witness on behalf of appellee testified in the same manner.

It is appellant's position that the eastern boundary of his property and Ms. Henson's is a straight line, because they appear straight in the aerial photographs. Therefore, he argues that it is inconsistent that Ms. Henson prevailed on her adverse possession claim to a thirty-foot strip and that he did not prevail. However, appellant ignores that Ms. Henson, since her purchase of her land in 1988, mowed the strip of land that was contrary to the survey, and she had a building and plants and a flag pole on that strip of land. There was evidence that appellees came on to her land, digging up the soil in 1996, contrary to her established ownership since 1988. This was open, notorious, and clearly adverse to any claim by appellees. This is why she prevailed.

In addition, the tract of land between appellant's and Ms. Henson's, owned by the Staggs, was judicially determined to be in line with what the chancellor determined in this case. This boundary line runs south from a pecan tree growing in Ms. Henson's yard — a landmark that multiple witnesses testified was used as a marker when plowing or tilling the land.

■ Appellant also mischaracterizes the clarity of the aerial photographs. The photographs were taken from such a distance that the plats of land appear in a quilt-like pattern. In our de novo review, we could not discern where any of the landmarks in question lay. The chancellor agreed that the boundary lines appeared to be in a "relatively straight line north and south between the properties," but went on to state that "it would be difficult, if not impossible, for the court or anyone else to ascertain with any surety the angle from which the photos were taken, or the altitude, and or to calculate any distance shown from the middle of the big tree to the crops growing, east or west. An aerial photograph taken from an angle of even a few degrees to the east or west could create a totally different appearance of the crop lines and their location, as evidenced by the photos." We do not find his conclusion regarding the photographs to be clearly erroneous.

While appellant makes much of the fact that some of appellees' witnesses testified that there were wooden posts in line with the big oak tree, he neglects to point out that those references were to periods of time after which appellees allege that appellant had moved those posts over thirty feet to the east, contrary to the true boundary line. Consequently, this is of no help to appellant since it only goes to prove that appellant attempted to change the boundary line just before litigation began.

■ We cannot say that the chancellor clearly erred in this case, and therefore we affirm.

HART and JENNINGS, JJ., agree.