ARKANSAS DEPARTMENT of HUMAN SERVICES
*v.* Ethel KEELING

CA 00-1075                                          43 S.W.3d 772

Court of Appeals of Arkansas
Division I
Opinion delivered May 9, 2001
[Petition for rehearing denied June 13, 2001.]

*Terry Hays Swicegood*, Office of Chief Counsel, for appellant.

*Robert L. Thacker*, 20th Judicial District Public Defender, for appellee.

W ENDELL L. GRIFFEN, Judge. Appellant in this case is the Arkansas Department of Human Services (DHS). The appellee is Ethel Keeling, who is represented by an attorney ad litem. Appellant appeals from an order of the Searcy County Probate Court in which the probate judge granted the attorney ad litem's request to force appellant to reveal the name of the person or persons who initially reported the suspected neglect of Mrs. Keeling. We affirm the order of the probate court based on the holding that its findings are not clearly erroneous.

This case arises out of the suspected neglect of Mrs. Keeling, who is cared for by her son, Tom Keeling. Mrs. Keeling is in her mid–80s and has been diagnosed with end–stage Alzheimer's disease. She is not ambulatory and requires twenty-four-hour supervision. Her son removed her from a nursing home in 1996, and she lived with him in his home for approximately one year. In 1997, she was returned to her own home. After Mrs. Keeling returned to her home, appellant received four reports alleging that she was not receiving proper care. Workers from Adult Protective Services (APS) and home health workers visited Mrs. Keeling's home on several occasions and found her unsupervised for one or two hours or longer and not properly fed. She was also hospitalized several times in 1999 for dehydration and other ailments. On one occasion, she attempted to get outside, where her front porch has a three-foot drop-off, because she thought she heard her deceased husband calling to her. In short, Mrs. Keeling lacks the capacity to comprehend what her physical needs are or when a situation presents imminent danger to her health or safety.

The APS worked with Mr. Keeling for two years to keep his mother in her home. When those efforts failed, largely due to Mr. Keeling's hostility and refusal to cooperate, APS filed a petition with the probate court seeking court-ordered services to provide for her needs, or alternatively, to gain custody of her to ensure her safety. At the hearing, Mr. Keeling stipulated that probable cause existed to allow the State temporary custody of his mother or to mandate court-ordered services. However, he informed the court that he had hired a live-in caregiver for his mother the day prior to the hearing. The court allowed Mrs. Keeling to remain in her home, but ordered her son to cooperate with appellant regarding her care. The court kept the case open, during which time Mr. Keeling again refused to cooperate and during which time DHS

had reason to believe that Mrs. Keeling was again being left unattended. Because Mr. Keeling had acted hostile to the caseworker to the point where the caseworker feared for her safety, and had refused to let her come into Mrs. Keeling's home, DHS obtained an order for local law enforcement to accompany the caseworker when she checked on Mrs. Keeling.

Eventually, another caregiver was brought into the home, and DHS and the probate court were satisfied that Mr. Keeling would continue to provide reasonable care for his mother. Therefore, appellant moved that the case be dismissed. The probate court granted the motion for dismissal, but also granted, over appellant's objection, the request by Mrs. Keeling's attorney ad litem to order appellant to reveal the name(s) of the person(s) who gave the initial report in this case. Appellant subsequently filed a motion for reconsideration, again objecting to the court's order. The probate court denied appellant's motion for reconsideration. Appellant appeals only from the order dismissing the appeal and mandating that DHS release the name of the reporter.

The reporting of adult abuse is governed by statute in Arkansas. The right of a subject of an adult abuse report to receive information contained in the report is governed by Arkansas Code Annotated section 5-28-213(a)(4) (Supp. 1999), which provides that reports of adult abuse shall be confidential and shall be made available to any person who is the subject of a report. However, the release of certain information contained in the reports may be prohibited under certain circumstances. Arkansas Code Annotated section 5-28-111(a)(1) (Supp. 1999), states:

> (A) At any time, the subject of a report may receive, upon request, a report of all information contained in the central registry concerning completed founded investigations of which he or she is a subject.
> (B) However, the director of the department or his authorized agent is authorized to prohibit the release of data that would identify the person who made the report or cooperated in a subsequent investigation *if the director reasonably finds the data to be detrimental to the interest or safety of the person.*

(Emphasis added.)

The issue in this case is whether the probate judge erred in granting the attorney's request to force the appellant to reveal the name of the initial reporter(s) of Mrs. Keeling's neglect. Probate

cases are reviewed *de novo* on appeal, and we do not reverse the findings of the probate judge unless those findings are clearly erroneous. *See Gilbert v. Gilbert*, 47 Ark. App. 37, 883 S.W.2d 859 (1994). A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *See Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). We are left with no such conviction on the facts of this case. Because the director of the DHS never made a finding that releasing the information requested would be detrimental to the interest or safety of the person who made the report, we hold the probate judge did not err in ordering DHS to reveal the name of the reporter.

In this case, Mrs. Keeling's attorney requested the name of the reporter after he spoke with two of her neighbors who told him she was well cared for. He made the request, stating:

> If there's somebody out there that knows something I don't know, I need to know about it. From what I've seen, there's no basis for a complaint but I would like to speak to these persons and see just what it was that caused them to file this complaint. And, with that exception, I think I'm entitled to that information as her attorney.

He also stated, "And, if the complaint has a valid basis, I'll do some more investigation. If not, then I'll ask Mr. Daniel [the then deputy prosecutor] to look into it if it's false."

There are no Arkansas cases that have addressed the issue raised in this case. Nor is there any legislative commentary on these statutes that might shed light on the legislative intent in this regard. However, the case turns on a simple matter of statutory construction. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Yamaha Motor Corp. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *See Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. *Id.*

The language of the governing statute is unambiguous. Section 5-28-211(a)(1)(B) clearly authorizes the director of the department or his authorized agent to prohibit the release of data identifying the reporter *if* the director reasonably finds the data to be detrimental to

the interest or safety of the person. Appellee argued during the hearing in which the court first ordered that the reporter's identity be released that the record contained no such finding, and that the disclosure order should stand as issued unless the director presented evidence that disclosure would be detrimental. Appellant countered below that the statute also authorized the director's agent, in this case, the attorney for DHS, to prohibit the release of information identifying the reporter, and asserted that it objected to disclosure on behalf of the director on the ground that it would jeopardize the safety of the reporter. Thereafter, appellant submitted its motion for reconsideration, but again failed to include any evidence of such a finding by the director.

■ Section 5-28-211(a)(1)(B) is silent with regard to the specific manner in which the director must make his finding, but certainly *no* finding by the director was submitted in this case. Moreover, to hold that the objection by appellant's attorney was a finding by the director would be tantamount to nullifying the requirement of the statute. The statute allows the director or his agent to prohibit the release of information, but only upon a finding by the director. The statute neither allows the director's agent to make such a finding, nor to raise an objection in the absence of a finding, and thereby, prohibit the release of the information.

Appellant raises three arguments for reversal: 1) that compromising the name of the reporter under these noncompelling circumstances will have a chilling effect on those who would report elder neglect and abuse; 2) that the name of the reporter is of no benefit to appellee because no action was taken until DHS conducted its own investigation and made its own findings and because the initial conditions that were reported in 1997 have since been remedied; and 3) that ordering it to reveal the reporter's name might compromise the interests or safety of the reporter.

■ We note that appellant's arguments are well-founded on the facts of this case. We also concede that it is difficult to conceive how Mrs. Keeling will now benefit from knowing the name of the party who first reported her neglect at this late date, where the reports of neglect were substantiated but where the conditions that caused appellant to intervene have been remedied. Nonetheless, as the issue raised is a simple matter of statutory construction, and DHS did not comply with the minimal requirement of the statute, we must affirm.

Affirmed.

JENNINGS and BIRD, JJ., agree.