Cite as 2023 Ark. App. 484

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-266

| | |
|---|---|
| PERRY LINDER, JR., AND KATHY LINDER | Opinion Delivered November 1, 2023 |
| APPELLANTS | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12CV-20-106] |
| V. | |
| MICHAEL STEVEN GERTSCH AND LISA GERTSCH | HONORABLE HOLLY MEYER, JUDGE |
| APPELLEES | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This is a dispute over the title to a 1.63-acre parcel of real property ("Subject Property") situated on the Little Red River. Appellee Michael Gertsch has owned lot 1 of Hidden Valley Estates since 1982. Gum Springs Creek is the dividing line between lot 1 and the Subject Property. It is part of Hidden Valley Subdivision along the Little Red River in Cleburne County. Record title to the Subject Property is vested in the Gertsches, but appellants Kathy and Perry Linder claim ownership by adverse possession or boundary line by acquiescence. The circuit court rejected the Linders' claims and quieted title to the Subject Property in the Gertsches. On appeal, the Linders maintain this court should reverse the judgment and revised judgment and also reverse the denial of their motion for reconsideration. We affirm.

The Subject Property was conveyed by Robuc, Inc., to Fleda and William Shearer and Etta Jane and J.C. Shearer in 1984 along with all other property within Hidden Valley Estates Subdivision that had not already been sold to third parties. A year later, in 1985, Etta Jane and J.C. Shearer relinquished their interest in all such property (including the Subject Property) to Fleda and William Shearer. Lisa and Michael Gertsch purchased the Subject Property on October 6, 2018, from the estate of Fleda Shearer. The Linders purchased their farm adjoining the Subject Property in 1992 and understood that the property acquired through that transaction did not include the Subject Property.

Perry Linder testified that when he bought his farm, he received a survey at closing identifying a triangle consisting of 12.68 acres that was not being conveyed, and the Subject Property lies at the eastern end of that triangle. Perry believed he later acquired title to the Subject Property through a quitclaim deed executed in 1999 from Ricky Whisnat. However, the quitclaim deed was indefinite in that it did not identify what property it purported to convey. Whisnat was not called to testify at trial, and there is no indication in the public record that the Linders ever owned any interest in the Subject Property.

Following the Gertsches' purchase of the Subject Property in 2018, the Linders discovered a deer stand that had been installed on it by the Gertsches, and this dispute arose. The following months were marked with various acts of dominion over the Subject Property that are not disputed—the Gertsches obtained a survey and installed a fence, the Linders cut the fence to brush hog the Subject Property, the Linders painted blazes on the trees and posted no-trespassing signs, and the Gertsches removed them.

Ultimately, the Linders filed their complaint seeking to quiet title to the Subject Property through boundary line by acquiescence and adverse possession, and the Gertsches counterclaimed. In support of his claims, Perry testified that at one point in time, a barbed-wire fence existed along the east side of the Subject Property. The characteristics of the fence and whether it even existed were disputed by the parties.

A survey from 2000 depicted a fence as "partially down" and "meandering" and only traversing a small portion of the Subject Property well inside its eastern boundary. Perry testified that the fence represented the boundary between his property and the Shearers to the east. In support of his contention, Perry introduced, and the court considered, testimony that J.C. Shearer "recognized the fence was there and indicated that was the property line. He had no issue with it, didn't seem like it bothered him much one way or the other." Perry further testified that he had not maintained the fence since the 1970s when his father owned his farm. Kathy Linder believed that she paid ad valorem taxes on the Subject Property but did not know.

Aneatha Hill was the title agent who closed the sale of the Subject Property from the Shearer Estate to the Gertsches. Hill researched the status of title to the Subject Property in connection with the issuance of a title insurance policy to the Gertsches. Nothing in the public record indicated any interest of the Linders to the Subject Property. Hill determined that the ad valorem taxes assessed against the Subject Property had been paid by the Shearers and the Shearer Estate—not the Linders. There was no hint of any dispute between the parties prior to the Gertsches' purchase of the Subject Property. However, the contentions of the

parties with respect to possession and occupancy of the Subject Property over the past several decades are in stark contrast.

Perry testified that he acquired a brush hog and kept the Subject Property clear of brush beginning in 2015. Michael Gertsch testified that in forty years, he had never seen any sign of maintenance or development on the Subject Property. Michael had never seen anyone brush hog the Subject Property until after he had purchased and fenced it. He also testified that he had only seen human activity on the Subject Property twice in forty years. However, the Linders testified to hunting upon and otherwise using the Subject Property recreationally, and Perry testified to posting the Subject Property with purple paint.

The circuit court rejected the Linders' claims and quieted title to the Subject Property in the Gertsches. The court found that the Gertsches derived clear record title to the Subject Property from the estate of Fleda Shearer. With respect to the claim of boundary line by acquiescence, the circuit court held that the fence remnants were indefinite and uncertain, that there was no credible evidence regarding the Shearers' knowledge or opinions of boundary lines, that the Linders claimed both to the location of the alleged fence and to the creek itself, and that Fleda Shearer's request for an easement to the Subject Property in 2015 indicated that she believed she still owned the Subject Property.

After viewing the Subject Property and considering the evidence, the court found it to be wild, unimproved, and unenclosed. With respect to the claim for adverse possession, the court found that the continuous payment of taxes by the Gertsches and the Shearers before them required that the Gertsches be deemed to be in possession of the Subject

4

Property as a result of its wild and unenclosed state. Finally, at trial, the Linders requested that the court reform the indefinite quitclaim deed from Whisnat to include reference to the Subject Property. The circuit court held that the lack of any evidence that Whisnat owned the Subject Property in the first place precluded a finding of mutual mistake and that reformation would prejudice the Gertsches, who were bona fide purchasers. The Linders filed a motion to reconsider, which was denied by the circuit court. This timely appeal is now properly before our court.

The circuit court's judgment rejecting the claims of adverse possession, boundary line by acquiescence, and reformation can be reversed only if the decision was clearly erroneous. *Robertson v. Lees*, 87 Ark. App. 172, 181, 189 S.W.3d 463, 469 (2004). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Rigsby v. Rigsby*, 356 Ark. 311, 316, 479 S.W.3d 318, 322 (2004).

The Linders argue that the circuit court erred in its judgment and that they should have been held to own the Subject Property as a result of boundary line by acquiescence. In support of their claim, the Linders introduced a statement from J.C. Shearer (deceased) regarding a fence that was alleged to have stood to the west of Gum Springs Creek. This court has held that boundary line by acquiescence requires proof of three essential elements— (1) a tacit agreement between the parties; (2) recognition of the boundary for a long period of time; and (3) a fixed line that is definite and certain. *Thurkill v. Wood*, 2010 Ark. App. 319, 374 S.W.3d 790.

The primary basis for the circuit court's rejection of Perry's contentions regarding the statement of J.C. Linder came down to credibility. The responsibility to judge the credibility of witnesses lies solely with the trial court. *See Bobo v. Jones*, 364 Ark. 564, 567–68, 222 S.W.3d 197, 200 (2006). However, even if the court were to have accepted this testimony and found it credible, the boundary-line claim fails for a far simpler reason: "Whenever adjoining landowners tacitly accept a fence line and thus apparently consent to that as their property line, it becomes the boundary by acquiescence." *Ward v. Adams*, 66 Ark. App. 208, 212, 989 S.W.2d 550, 552 (1999). There was no evidence that J.C. Shearer and the Linders, or their predecessors in interest, were ever neighboring property owners.

Ultimately, the Linders' boundary-line-by-acquiescence claim depended on a statement from a deceased witness. The court did not find this credible. "A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of a boundary line." *Ward*, 66 Ark. App. at 212, 989 S.W.2d at 552. Absolutely no evidence was introduced by the Linders that would support the conclusion that the Shearers recognized a forfeiture of their property on the west side of Gum Springs Creek. Considering the evidence in the record before us, we cannot say the circuit court's decision was clearly erroneous.

The Linders also argue the circuit court erred in rejecting their claim of adverse possession. We disagree and hold that the circuit court correctly held that the Linders failed to meet their burden to prove ownership of the Subject Property by adverse possession.

In order to prevail on their claim for adverse possession, the Linders were required to demonstrate actual possession for seven years. *Thompson v. Fischer*, 364 Ark. 380, 384, 220 S.W.3d 622, 625. "In addition, the possession must have been actual, open, notorious, continuous, hostile and exclusive, and it must be accompanied with an intent to hold against the true owner." *Id.* The Linders' burden in this case was heightened by the court's finding that the Subject Property was wild, unimproved and unenclosed.

Arkansas Code Annotated section § 18-11-102 (Repl. 2015) provides that "[u]nimproved and unenclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he or she has color of title thereto, but no person shall be entitled to invoke the benefit of this section unless he or she, and those under whom he or she claims, shall have paid the taxes for at least seven (7) years in succession."

"The statute applies only to 'unimproved and unenclosed land;' that is to say, land that is wild and in a state of nature." *Jones v. Barger*, 67 Ark. App. 337, 343, 1 S.W.3d 31, 36 (1999). The statute operates as an absolute bar to a claim of adverse possession by a party that does not pay the taxes, and to that end, this court has held:

> Arkansas Code Annotated § 18-11-102 provides that unimproved and unenclosed land shall be deemed to be in the possession of the person who pays the taxes on it for at least seven years in succession, provided that he has color of title. The possession contemplated by this section has the same effect as if the person paying the taxes had been in actual, adverse possession of the land for the full seven-year period. Payment of taxes under color of title for more than seven years on unenclosed and unimproved property confers title by limitation. The payment of taxes under this section constitutes an eviction of all others who claim to be in constructive possession.

*Appollos v. Int'l Paper Co.*, 34 Ark. App. 205, 206–07, 808 S.W.2d 786, 787 (1991) (internal citations omitted).

Because of its unimproved and unenclosed state, as observed by the circuit court during a site visit the morning of trial, the Subject Property cannot be adversely possessed. These statutory presumptions were, in part, a codification of long-standing Arkansas case law. "The use of wild, unenclosed and unimproved land is presumed to be permissive, until the persons using the land of passage, by their open and notorious conduct, demonstrate to the owner that they are claiming a right of passage." *Stahl v. Thompson*, 6 Ark. App. 275, 277, 641 S.W.2d 721, 722 (1982). The presumption is rebutted where "hostility of conduct in the usage of the land" is shown between the adverse possessor and true owner. *Anita G, LLC v. Centennial Bank*, 2019 Ark. App. 217, at 11–12, 575 S.W.3d 561, 569. No such evidence exists in this case. The Linders presented no evidence of any communications or interactions with the Shearers other than a brief conversation with J.C. Shearer seven years removed from when he owned a fractional interest in the Subject Property. Accordingly, we affirm the circuit court's finding.

Finally, the circuit court properly declined to grant the motion to reconsider. The Gertsches agree that abuse of discretion is the applicable standard. They did not present any evidence to meet such a high burden; accordingly, we affirm the circuit court's decision to deny the Linders' motion to reconsider.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

8

*Robert S. Tschiemer*, for appellants.

*Kutak Rock LLP*, by: *Kyle T. Unser*, for appellees.