Sammy HICKS et al *v.* Lee Otis NEWTON
ET AL

73-190                                    503 S.W. 2d 472

Opinion delivered January 14, 1974

*Shackleford & Shackleford,* for appellants.

*Spencer & Spencer,* for appellees.

John A. Fogleman, Justice. This case involves a dispute about a boundary line. Appellant and the other heirs of Robert and Lula Hicks own 80 acres of land. A part of the northern boundary of that tract is the southern boundary of a 40-acre tract owned by appellees. The dispute was provoked when appellees caused a survey of the boundary to be made and built a fence on this line, which is now conceded to be the true boundary. Appellant then brought this action for himself and his co-heirs, claiming a tract of 0.84 of an acre north of this line and fence. He based this claim upon allegations that an old road along, but lying north of, the true boundary had been recognized as the dividing line by the parties for over 30 years, making this road a boundary by acquiescence. This road, according to the contentions of appellant, lay north of the presently established true line. Appellant also claimed that he and the other heirs of Robert and Lula Hicks held this 0.84-acre tract by adverse possession. Appellees claimed that the fence was on the true boundary and that they, rather than appellant and his co-heirs and their predecessors in title, had held adverse possession of the lands.

After trial, the chancellor, who viewed the property involved, made specific findings that appellant had failed

to sustain his burden of proving that there was an agreed boundary or that he and his co-heirs had title by adverse possession, and entered his decree accordingly, fixing the true boundary on the survey line. Appellant recognizes that the chancellor's findings as to adverse possession, the location of the true boundary and the fixing of a boundary by express agreement are not clearly against the preponderance of the evidence. He argues, however, that the chancellor's decision entirely overlooked the issue as to whether there was a boundary by acquiescence. Even if this be so, appellant failed to meet his burden of proving long acquiescence in the road, if indeed it existed in the vicinity of the disputed area, as a boundary.

The common boundary between the parties is 757.3 feet long. It clearly appears that both the true line and the boundary claimed by appellant lie totally in wooded lands. The evidence appears to clearly establish a boundary, at least by adverse possession, in a road between the owners along the north line of the east half of the Hicks' 80-acre tract, where the lands on both sides are in cultivation, but the disputed line is the north boundary of the west one-half of this tract, which is not cleared or in cultivation. There is evidence from which a finding that the Hicks family recognized a road connecting two north-south public roads, one lying west, and the other east, of the two tracts involved, might have been justified, but there is no evidence that appellees or their predecessors in title did. Although silent acquiescence is sufficient, there is no evidence that the Newtons were ever aware that anyone claimed that the road, said by some witnesses to have ultimately reached the Thomas farm which lay west of the Newton property, constituted a boundary. Even though there was testimony by members of the Hicks family that the Newtons were never known by the witnesses to have claimed any of the land south of this road, there is no evidence that there was any occasion for them to assert a claim. This alleged road, according to the county surveyor, the first witness called by appellant, is now evidenced only by a rutted terrain through the woods. He found pine and gum trees as much as five inches in diameter growing in this terrain. No lane or road in the wooded area was apparent to this surveyor on aerial photographs of the area taken in 1951, 1956 and 1964. He found some posts and wire out in the area, but could not connect them, and he could not find enough posts and wire to establish the course of a fence. Even though he

attempted to sketch what he felt was the center line of this road, he admitted that he could not tell on which side of the road fences had run at some time in the past. According to appellant, his sister and brother, however, the west half of the Hicks tract was timbered and not fenced. He admitted that these lands were always unenclosed and unimproved and used only for making "ties." According to Roosevelt Newton, there once had been an old wagon road which meandered in a westerly and southwesterly direction from its connection with the lane between the Newton land and the east half of the Hicks property. He said that this road was abandoned in 1928. His wife testified that during the 36 years she lived with her husband she never heard of any of the Hickses or anyone claiming to own any of the Newton land north of the true line. Jack Newton, aged 43, testified that he had lived near the Hicks property all his life and never knew of any road that ran anywhere near the southwest corner of the Newton tract, and had never known any of the Hickses to claim any property north of the true line. It is significant that Lewis Hicks, who had lived all his life on the Hicks tract helped Roosevelt Newton to build the fence on the true line, without laying any claim to the disputed tract and without making any objection, beyond saying that the fence was not on the old line. This witness, upon examination by the chancellor, stated that there had been nothing in the woods that would mark the line between owners to the north and those to the south.

This evidence falls far short of establishing acquiescence by the Newtons in any boundary except the true one.

HARRIS, C.J., not participating.