Faye AVINGTON *v.* Jessie Paul NEWBORN

CA 80-324                                    609 S.W. 2d 678
Court of Appeals of Arkansas
Opinion delivered December 23, 1980
[Rehearing denied January 21, 1981.]

*Arnold & Demott*, for appellant.

*Henry Morgan*, for appellee.

JAMES H. PILKINTON, Judge. The appellant, Faye Avington, and the appellee, Jessie Paul Newborn, own ad-

joining lands in Clark County, Arkansas. In the summer of 1979, Mrs. Avington had a survey made to determine the location of her east boundary line. There was an old fence, located somewhat west of where appellant thought her east boundary line was located. After appellant had the boundary surveyed, she took down the old fence, and had a new fence constructed just inside the survey line.

Mr. Jessie Paul Newborn, who now owns the property to the east, was in the U.S. Army and was stationed in Germany at that particular time. Mr. Newborn was notified by his aunt that the old fence had been taken down and a new one constructed. Mr. Newborn took a leave of absence and came back to Clark County, and filed this action in chancery court, asking for injunctive relief and damages for trespass. According to the pleadings, he based this claim on adverse possession of the approximately five-foot strip in dispute.

The chancellor found in favor of appellee, determined the old fence to be the boundary line between the lands, and ordered Mrs. Avington to move the newly constructed fence to the old fence line. The chancellor also awarded judgment against the appellant in the sum of $1,500 for actual and punitive damages. Mrs. Avington has appealed from the decree of the chancery court.

The evidence is undisputed that the old fence, now in question, was erected as a fence of "convenience" rather than as a boundary fence. Counsel for appellee phrases it in his brief as follows:

From the testimony of appellee's witnesses it was apparent that in the early 1900's, appellee's grandfather moved his fence east to allow a lane for public use. Likewise, appellant's predecessors in title moved his fence west to add to this lane.

The record is clear that there were originally two fences, which outlined a lane approximately ten feet in width, and that this lane was for the convenience of the parties who then owned the lands. The record further shows that over the years, the fence on the east side of this old lane deteriorated

and passed out of existence, but Mrs. Avington and her predecessors in title ran cattle on their land, and for that reason maintained the fence on the west side of what was once the old lane. It is also clear that this strip in whole or in part was used as a lane for a second time at a later date, to afford ingress and egress to a house owned by the Newborns. The exact location of the house is not established by the record, and the evidence is unclear as to dates on any of these events which are critical to appellee's claim of adverse possession. It is clear, however, that the true boundary line between the respective parties was the approximate center of the lane created by the setback of the fences.

The evidence indicates that Mrs. Avington is the record owner of the strip involved, i.e., the five or six feet of land immediately east of the old fence line as shown on the Whitfield survey. Appellee's claim rests solely upon the existence of the old fence which, when he bought his land, he mistakenly assumed to represent the location of the true legal boundary. There is no contention here that Mrs. Avington did not put the new fence on her side of the correct line as established by Mr. Gary L. Whitfield, the only surveyor to testify. Mr. Newborn and Mrs. Avington both said they were attempting by this lawsuit to claim only to the correct legal line on the ground. And the prayer in appellee's complaint seems to be in accord. It prays that the chancery court "enter a mandatory injunction directing the Defendant to replace the fence upon the historically accepted line, *being the true boundary line between the properties owned by Plaintiff and the property owned by the Defendant.*" (Emphasis supplied). Appellant therefore contends that any possession by Mr. Newborn was not adverse, on the theory that appellee intended to claim only to the true boundary, wherever that was, and was not claiming unconditionally the ownership of the land up to the old fence. See *Wilson* v. *Hunter*, 59 Ark. 626, 28 S.W. 419; and *Goodwin* v. *Garibaldi*, 83 Ark. 74, 102 S.W. 706. However, Mr. Newborn's other testimony was to the effect that his claim was unconditional and he sought to prove that his possession to the old fence was under absolute claim of title. Thus although he stated on cross-examination, in response to a leading question, that he intended to claim only what his deed called for, at the same time he was very specific in his other testimony

that at the time he bought the property from other members of his family he thought and assumed that the old fence represented the line. Appellee claimed he had never at any time recognized a possibility that the line might be anywhere else. Be that as it may, we can dispose quickly of the appellee's claim of adverse possession. Until Mrs. Avington built the new fence and enclosed the approximately five feet of land in question, the record shows that this property was vacant and unenclosed. Hence appellee's assertion of title by adverse possession rests solely upon the fact that his neighbor's predecessor in title placed the old fence some five or more feet short of the common boundary. It is firmly settled, however, that "a landowner who puts his fence inside his boundary line does not thereby lose title to the strip on the other side. That loss would occur only if his neighbor should take possession of the strip and hold it for the required number of years." *McLendon* v. *Johnson*, 243 Ark. 218, 419 S.W. 2d 309 (1967); *Brown Paper Mill Co.* v. *Warnix*, 222 Ark. 417, 259 S.W. 2d 495 (1953). Here there is no semblance of actual hostile possession on the part of the appellee or his predecessors in title. Certainly there was no notice to Mrs. Avington that anyone was claiming the old fence as a boundary line. Under the circumstances here, appellee's possession could not ripen into title by lapse of time, unless notice was in some way brought home to the true owner that the occupancy had changed from a permissive use for the convenience of the parties into a hostile use. In other words, if the holding of the strip, east of the old fence, began as an easement for a lane, by common consent, and for the convenience of the owners of both tracts, such holding could not change into an adverse or hostile status until notice was in some way brought home to the record owner, and the holding had continued adversely thereafter for the statutory period. Appellee admits that he never gave Mrs. Avington notice that he was claiming ownership to the "old lane fence" or that he considered it the west boundary line of his land. *Harp* v. *Christian*, 215 Ark. 833, 223 S.W. 2d 778 (1949).

After a careful consideration of the evidence, we have concluded that the decree of the chancery court is clearly erroneous (clearly against the preponderance of the evidence), and must be reversed. Rule 52, Ark. Rules of Civil

Procedure. The evidence here falls far short of that required to establish title by adverse possession. Appellee is only thirty years of age, and knew nothing about the old lane. He claims that the fence still standing in 1979, which appellant tore down, was the same one that once existed on the east side of the lane. He had no personal knowledge of the lane, or which fence survived. Some of his witnesses did identify the fence still standing as "the same one that appellee's grandfather built" but, on cross-examination, this evidence was weakened considerably as the witnesses admitted that they had not been on the land in recent years, and really were not sure whether it was the east or west lane fence which was still standing. On the other hand, appellant's testimony concerning the old lane, the two fences bordering it, and the history of the surviving fence is clear and definite. While she is a party, and that must be taken into consideration in weighing her testimony, the evidence furnished by the surveyor corroborates the fact that it was the west lane fence that survived. Otherwise, the survey line would be five feet further west of the old fence. That would be inconsistent with appellee's claim of adverse possession, as he would be the record owner of the strip in question. A careful review of the record clearly shows that the old fence, which appellant took down in 1979, was in fact the one originally built on the west side of the lane; and the finding of the chancellor to the contrary is clearly against the preponderance of the evidence.

It has been suggested that even though the evidence is not sufficient for appellee to prevail on the theory of adverse possession, this court should affirm the decree of the chancery court, on de novo review, on either the agreed boundary theory, or on a finding here that the fence had become a boundary line by long acquiescence. We find no merit in either of these suggestions. There is no evidence in this record to show that the fence still standing was an agreed boundary line. Appellee made no serious effort to show an agreement concerning this fence as a boundary line. The record shows it was only a setback fence for a lane. The burden of proof was on appellee to show that the parties, or their predecessors in title, had agreed on a boundary other than that described in the respective deeds; and appellee made no serious effort to discharge this burden.

Neither do we find any merit in appellee's suggestion that the fence had become a boundary line by long acquiescence. In all of the cases on boundary lines by acquiescence, there has been involved a peaceful adverse occupation of the lands up to the fence by the person claiming the boundary to be one by acquiescence. *Council* v. *Clark*, 246 Ark. 1110, 441 S.W. 2d 472 (1969) and cases there cited. Here the fence in question was built generally five feet off of the true boundary to accommodate a lane. The appellee failed to prove when the other lane fence passed out of existence, or the date the property ceased to be used as a lane. There is no basis upon which this decree could be properly sustained on the theory that the fence had become a boundary line by long acquiescence. The case was not tried on that theory, and there is no substantial evidence in this record to support that theory.

Appellant filed a cross-action below asking the trial court to settle her east boundary line in accordance with the Whitfield survey, and seeking to have appellant's title to and possession of the disputed strip quieted and confirmed. She is entitled to that relief in light of the decision reached by this court. Therefore as title to land is involved, this case must be remanded for the entry of a final decree consistent with this opinion.

As this case is being reversed on another ground, the questions concerning damages have become moot.

Reversed and remanded.