Joe R. SUMMERS *v.* Delmas H. DIETSCH and Mary A. Dietsch

CA 92-894                                            849 S.W.2d 3

Court of Appeals of Arkansas
Division II
Opinion delivered February 24, 1993

*Coxsey & Coxsey*, by: *Kent Coxsey*, for appellant.

*Gerald K. Crow*, for appellee.

JOHN MAUZY PITTMAN, Judge. Joe R. Summers, appellant, appeals from an order of the Carroll County Chancery Court concerning a boundary line dispute between appellant and appellees, Delmas and Mary Dietsch. The chancellor found that

the disputed boundary line was accurately reflected on a 1991 survey and was not located along a particular fence line, as contended by appellant. Appellant contends that the chancellor erred in not finding either that the fence line constituted a boundary by acquiescence or that appellant had gained title to the disputed area on his side of the fence by adverse possession. We agree with appellant's first point and hold that the boundary line was established by acquiescence. We therefore do not reach appellant's second argument.

In 1943, Roy Summers, appellant's father, purchased forty acres of land. In 1954, he deeded the east thirty acres to his father and appellant's grandfather, J.R. Summers. In 1970, Roy Summers deeded the remaining ten acres to his son, the appellant herein. Also in 1970, J.R. Summers deeded his thirty acres to Dale Kesner. In 1980, Kesner deeded fifteen of his thirty acres to the appellees, Delmas and Mary Dietsch. Appellees' fifteen-acre tract shares a common north-south boundary with appellant's ten-acre tract and lies immediately to its east. Appellant has been in possession of his ten acres since 1970. Appellees have been in possession of their fifteen acres since 1980.

During all relevant times, a fence has divided appellees' lands from those of appellant. The fence in question runs north-south and has existed for at least forty years. The fence is not mentioned in the parties' deeds.

In February 1991, appellees had their land surveyed. The survey reflected that the fence was approximately forty feet east of their deed line on the north and thirty feet west of their deed line on the south. Thus, the fence encroached on the respective lands of each of the parties as described in their deeds.

Appellees filed suit seeking injunctive relief, removal of the old fence, and damages. Appellant responded stating that the old fence was the long-established boundary line and that it had become a boundary line by acquiescence. Appellant also contended that he had acquired title to the area in dispute by adverse possession. The chancellor found that the evidence would not support a boundary line by acquiescence nor appellant's claim of adverse possession of the area in dispute.

On appeal, chancery cases are tried *de novo* on the

record. However, we will not reverse the findings of the chancellor unless they are clearly erroneous, or clearly against the preponderance of the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *RAD-Razorback Limited Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1989); *Johnson* v. *Southern Electric, Inc.*, 29 Ark. App. 160, 779 S.W.2d 190 (1989).

Appellee Delmas Dietsch testified that when he began constructing a new fence on the survey line in 1991, appellant immediately complained. Dietsch stated that he thought that the fence was on his property in the early 1980s. However, he also testified that the 1991 survey provided the first knowledge he had that the fence was not on the deed line. He further stated that he never spoke to appellant about the encroachment until approximately one year before this action was filed. Dietsch acknowledged that he and appellant recognized the fence as their dividing line and that each used the property up to their respective sides of the fence for farming purposes.

James McMillan, appellees' former tenant, testified that Mr. Dietsch had helped him maintain the fence and had furnished him fence posts and other materials. McMillan stated that appellant had helped maintain the fence on occasion. McMillan said that he considered the dividing line to be the fence and stated that it was acknowledged that whatever was on the west side of the fence belonged to appellant and whatever was on the east side of the fence belonged to appellees.

Appellant testified that he was forty-five years of age and that the fence had been in its present location for as long as he could remember. He stated that the fence not only served to keep cattle in, but also served as a boundary line. He testified that there was never any question among his family, the community, "or anybody" as to the fact that the fence was the dividing line between the two properties. He stated he had always used up to the fence line, as had the predecessors in title to both tracts, and that during the twenty years of his ownership no one had ever objected to his use of the land. He stated that he claimed as his land everything west of the fence. Appellant's ex-wife corrobo-

rated his testimony regarding use of the property and stated that it was "common knowledge" to everyone in that area that the fence line was the boundary.

Boundaries are frequently found to exist at locations other than those shown by an accurate survey of the premises in question and may be affected by the concepts of acquiescence and adverse possession. A fence, by acquiescence, may become the accepted boundary even though contrary to the surveyed line. *Adcock v. Deaton*, 253 Ark. 189, 485 S.W.2d 203 (1972). The general rule in Arkansas as to establishment of a boundary line by acquiescence is stated in the case of *Tull* v. *Ashcraft*, 231 Ark. 928, 929-30, 333 S.W.2d 490, 491 (1960):

> We have frequently held that when adjoining land owners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence. *Deidrich* v. *Simmons*, 75 Ark. 400, 87 S.W. 649; *Robinson* v. *Gaylord*, 182 Ark. 849, 33 S.W.2d 710; *Seidenstricker* v. *Holtzendorff*, 214 Ark. 644, 217 S.W.2d 836. As we said in a very similar case, *Gregory* v. *Jones*, 212 Ark. 443, 206 S.W.2d 18:
>
>> "It is true that in this case the original rail fence line was established without a prior dispute as to boundary; but the recognition of that line for many intervening years (34 in this case) shows a quietude and acquiescence for so many years that the law will presume an agreement concerning the boundary."

In the case of *Kittler* v. *Phillips*, 246 Ark. 233, 236, 437 S.W.2d 455, 456 (1969), the supreme court stated:

> The appellant ably argues that to establish a boundary line by acquiescence there must be a mutual or expressed agreement of the dividing line. However, in *Stuart* v. *Bittle*, 236 Ark. 716, 370 S.W.2d 132 (1963), we said: "It may be conceded, as claimed by appellant, that there never was any express agreement to treat the fence as the dividing line between the two parcels of land. Such an agreement, however, may be inferred by the actions of the parties."

Moreover, as the court noted in *Rabjohn* v. *Ashcraft*, 252 Ark. 565, 570, 480 S.W.2d 138, 141 (1972):

> Quite apart from the inference of some parol agreement, a boundary may also be established by adjoining owners by acquiescence in a clearly established line as the boundary over a period in excess of seven years, whether preceded by a dispute or uncertainty as to the line or not and without the necessity of adverse user to the line. [Citations omitted.]

It is well established that whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line for a long period of time and thus apparently consent to that line, the line becomes the boundary by acquiescence. *Rabjohn* v. *Ashcraft, supra.* The property owners and their grantees are then precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one, although it may not be on the survey line. *Id*; *Seidenstricker* v. *Holtzendorff*, 214 Ark. 644, 217 S.W.2d 836 (1949).

▮ In this case, it is undisputed that the fence had been in existence at the same location for over forty years. During at least the twenty-one years of appellant's ownership, neither appellees nor their predecessors ever objected to appellant's use of all of the property west of the fence. Rather, the owners of each tract of land used the property on their respective sides of the fence, up to the fence line. The evidence indicates that both appellant and appellees helped maintain the fence. Although appellee Dietsch testified that he thought as early as 1980 that the fence was on his property, he also testified that he did nothing about it until commencing this action in 1991. By their actions, the parties and their predecessors have accepted the fence as the existing and physical boundary line for at least twenty years without question or objection. Appellees' actions belie their contentions to the contrary.

From our *de novo* review of the record, we conclude that the chancellor's finding that the fence line had not become the boundary by acquiescence is clearly erroneous. The decree is therefore reversed and the case remanded for entry of an order consistent with this opinion. The order should locate the boundary by description.

Reversed and remanded.

JENNINGS, C.J., and COOPER, J., agree.