HEDGER BROTHERS CEMENT and MATERIALS, INC. *v.*
John David STUMP

CA 99-750                                    10 S.W.3d 926

Court of Appeals of Arkansas
Division IV
Opinion delivered March 1, 2000
[Petition for rehearing denied April 5, 2000.]

220

*Noyl Houston,* for appellants.

*Lyons, Emerson & Cone, P.L.C.,* by: *Scott Emerson,* for appellee.

JOHN F. STROUD, JR., Judge. Appellants argue that the chancellor erred in ruling that they failed to establish a boundary by acquiescence between their property and appellee's. They also contend that the chancellor should have enjoined appellee from draining water onto their property. On cross-appeal, appellee argues that the chancellor should have granted him an easement over appellant's land. We affirm on direct appeal and reverse and remand on cross-appeal.

Appellants own approximately ninety-three acres in Jackson County. Directly south of their property are three contiguous tracts owned by Thaxton on the west, Howard on the east and appellee in the middle. Appellee's tract contains forty acres. The northern borders of Thaxton's and Howard's tracts are marked by levees constructed on their property. Appellants claim that appellee's northern border, though not marked by a levee or other physical monument, is in line with the Thaxton and Howard levees by virtue of many years of acquiescence. Appellee claims that his northern border lies approximately fifty feet north of the imaginary line that runs between the Thaxton and Howard levees. His claim is supported by two surveys, one conducted in 1993 and the other in 1996.

The total 133 acres, *i.e.,* appellants' ninety-three acres and appellee's forty acres, was once owned by Charlie Tubbs and his

mother, Lucy Tubbs, as a single tract. In 1969, they sold the southern forty acres to Johnny Tubbs, who conveyed it to his son Tommy in 1990. In 1993, the forty acres was acquired by Mr. John E. Stump, and he conveyed it to appellee in 1995. The northern ninety-three-acre tract was sold to Verlon Spencer of Double S Farms in 1994. Spencer sold it to appellants in 1996. The northern tract is heavily wooded and is often flooded. It is primarily used for duck hunting. The southern tract was also heavily wooded at one time. However, after acquiring the property in 1969, John Tubbs cleared it for farming. During the process, the bulldozer driver cleared an area approximately fifty feet north of the Thaxton-Howard levee line. In 1996, appellee, believing that the newly-formed timber line marked his northern border, constructed a levee along it. Appellants claimed that the levee was on their property and filed suit against appellee asserting that the Thaxton-Howard levee line was a boundary by acquiescence. After a trial, the chancellor found that appellants had not proved a boundary by acquiescence "as there is no road, ditch, levee or fence separating the tracts...." He therefore established the boundary between the tracts in accordance with the 1996 survey, which placed the boundary near the timber line.

Appellants' first argument is that the chancellor erred in failing to establish a boundary by acquiescence along the invisible line running between the Thaxton and Howard levees. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* The location of a boundary line is a question of fact. *Id.* Although chancery cases are reviewed *de novo* on appeal, we will affirm a trial court's finding of fact with regard to the location of a boundary line unless the finding is clearly erroneous. *Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 550 (1999). A finding is clearly erroneous when, although there is evidence to support it, we are left, after considering all of the evidence, with the definite and firm conviction that a mistake has been committed. *Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993). Whether a boundary line by acquiescence exists is to be determined upon the

evidence in each individual case. *Neely v. Jones*, 232 Ark. 411, 337 S.W.2d 872 (1960).

Appellant presented the testimony of almost all prior owners of the property in question. Charlie Tubbs, who owned both tracts between 1950 and 1969, said that the line between the Thaxton and Howard levees had always represented the northern border of the southern forty acres. Johnny Tubbs and Tommy Tubbs, owners of the forty acres between 1969 and 1993, also testified that the line between the levees marked their northern border. Verlon Spencer, who owned the northern tract between 1994 and 1996, confirmed this. Marvin Thaxton, the neighbor to the west, and Calvin Fields, a Tubbs brother-in-law and nearby property owner, testified likewise. All confirmed that no owner of the forty acres had ever claimed north of the invisible line between the two levees. Leon Hedger, president of the appellant corporations that acquired the northern tract in 1996, testified that he understood from Verlon Spencer and his realty agent that the border between the properties was in line with the levees.

Appellants also presented the testimony of Kenny Fletcher, a surveyor. Fletcher had acquired some old survey notes that were used in preparation for a 1969 survey that was never reduced to paper. Based upon Fletcher's reconstruction of the notes, there was not a "jog" in the northern border of the forty acres that would cause it to extend north of the line between the levees.

██ Despite this testimony, we uphold the chancellor's ruling that no boundary by acquiescence existed along the levee line. The ruling was primarily based upon the fact that there was no actual object lying between appellants' land and appellee's land that could serve as a marker for a boundary. A boundary by acquiescence is usually represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. *See Palmer v. Nelson*, 235 Ark. 702, 361 S.W.2d 641 (1962). A boundary by acquiescence has been affirmed when the parties tacitly agreed on a line running between two marks, such as concrete stobs, in *Disney v. Kendrick*, 249 Ark. 248, 458 S.W.2d 731 (1970), and trees in *Ward v. Adams, supra*. However, Arkansas law does not support the establishment of a boundary by acquiescence along an invisible line between two large land forms, such as levees, that are not truly capable of being used as accurate markers of a boundary. For example, there were some slight inconsistencies in

the testimony of appellants' witnesses regarding the location of the supposed line between the levees. Charlie and Johnny Tubbs and Calvin Fields said that the line was straight across from the Thaxton levee to the Howard levee. Tommy Tubbs said that the line went from the north berm of the Thaxton levee to the south berm of the Howard levee. In *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998), we held that uncertainty regarding the location of a boundary line may preclude an appellant from prevailing on a boundary-by-acquiescence theory. We also note that the southern landowners beginning with Johnny Tubbs in 1969 and ending with John E. Stump in 1995 farmed the fifty-foot area north of the levee line. This farming continued for twenty-five years without objection from the neighbors to the north. Such use began after a bulldozer operator hired by Johnny Tubbs mistakenly cleared the area. According to Tubbs, his mother, who co-owned the northern tract at that time, was unhappy about the accidental clearing. Nevertheless, he said that she allowed him to continue farming the area and that he and Tommy Tubbs farmed the cleared property to keep it from growing up and not under a claim of ownership. Finally, appellee elicited testimony from Kenny Fletcher that, although he believed a boundary existed on the levee line, he could not fault the 1996 survey (which was commissioned by appellants and utilized modern technological equipment unavailable in 1969) showing that the border lay north of the levee line.

Based upon the foregoing, we cannot say that the chancellor's ruling on this point was clearly erroneous.

The next issue concerns a drain that appellee put in his levee to divert water from his land onto appellants' land. Appellants sought an injunction to stop the operation of the drain. However, the chancellor refused to issue the injunction because appellants did not prove they were damaged by the operation of the drain.

The facts, in greater detail, are as follows. After building his northern levee, appellee installed a 16" to 18" pipe in it for the purpose of draining water off his land. The pipe is manually controlled and is activated by appellee six to eight times per year. Appellants' land and appellee's land are both prone to having standing water, due to the nearby presence of the Cache River, which floods quite often. Water naturally drains across appellants' property toward the river to the northwest. However, according to Leon Hedger, appellee's drain has changed the rate of flow of the water.

In other words, while water has always drained across appellants' land, now, when appellee opens his drain, more water drains at one time. Hedger admitted he doesn't intend to farm the property, but he worries that the excess water will kill the trees on his land. Appellee testified that the water has always drained across appellants' land and that the land is always flooded anyway.

■■■ A landowner has the right to fend off surface waters so long as he does not unnecessarily damage his neighbors. *Solomon v. Congleton*, 245 Ark. 487, 432 S.W.2d 865 (1968). This is sometimes called the common-enemy doctrine. *See Dent v. Alexander*, 218 Ark. 277, 235 S.W.2d 953 (1951). However, if the landowner is causing damage to his neighbor, he may be enjoined from casting the surface waters upon his neighbor's land. *Linker v. Rachel*, 163 Ark. 426, 260 S.W. 440 (1924). Appellants complained that the diversion of water damaged them because it increased the rate of water flow over their property. Such an acceleration of water flow is improper and may be enjoined. *See Dent v. Alexander, supra.* However, even if improper, the true question is whether appellants were actually damaged by the accelerated flow. *See id.* It was appellants' burden to prove damages. *See Marine Servs. Unlimited, Inc. v. Rake*, 323 Ark. 757, 918 S.W.2d 132 (1996). The only evidence on this point was Leon Hedger's bare assertion that he worried that the increased water flow would kill trees on his property. Due to the lack of proof, we affirm the chancellor on this issue.

The final issue on cross-appeal involves appellee's quest for an easement by necessity over appellants' land. The chancellor declined to grant appellee an easement because he had other access to his property. The easement sought by appellee is an old road that enters the eastern part of appellants' property from Highway 18, located to the north. The road extends for some distance to the south, toward appellee's property. There was testimony at trial that this road had been used in the past to gain access to the south forty and, according to Johnny and Tommy Tubbs, was the only means of access. Other witnesses testified that appellee could gain alternative access by driving across a levee on the western part of appellants' property, or by using Howard's levee on the east, or through Thaxton's property on the west.

■■■■ To establish an easement by necessity, appellee had to prove 1) that title to the two tracts in question were once held by one person; 2) that unity of title was severed by conveyance of one

of the tracts; and 3) that the easement is necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of severance of title and at the time of exercise of the easement. *See Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294 (1997); *Powell v. Miller*, 30 Ark. App. 157, 785 S.W.2d 37 (1990). Whether an easement by necessity exists is a question of fact. *Diener v. Ratterree*, 57 Ark. App. 314, 945 S.W.2d 406 (1997). The chancellor's finding regarding the existence of an easement will not be overturned unless it is clearly erroneous. *See White v. Zini*, 39 Ark. App. 83, 838 S.W.2d 370 (1992).

We believe the chancellor's ruling was clearly erroneous on this issue. The legal requirements of an easement by necessity have been met in this case. Both tracts were once owned by the same persons. Unity of title was severed in 1969 when the southern tract was conveyed to Johnny Tubbs. Johnny Tubbs testified that the road in question was necessary to transport farm equipment to his property. According to him, the necessity existed at the time he acquired the property and continued during the duration of his ownership and his son's ownership, a period of nearly twenty-five years. Further, although there was evidence of other means of access to appellee's property, there was no evidence that appellee had a legal right to use such other means of access. Also, there was considerable evidence that these means were either unsafe or unreasonable for frequent ingress and egress, thus leaving appellee essentially landlocked. An easement is necessary if there can be no other reasonable mode of enjoying the dominant tenement without the easement. *Black v. Van Steenwyk*, 333 Ark. 629, 970 S.W.2d 280 (1998).

Based upon the foregoing, we affirm on direct appeal and reverse and remand on cross-appeal for entry of an order consistent with this opinion.

ROBBINS, C.J., and ROAF, J., agree.