Robert HATTABAUGH, David W. Ware, and Linda Ware  *v.*
Jacquelyn E. HOUSLEY

CA 04-1295                                          217 S.W.3d 132

Court of Appeals of Arkansas
Opinion delivered November 16, 2005

*Troy Gaston,* for appellants.

*Otto R. Fry,* for appellee.

DAVID M. GLOVER, Judge. This appeal is a result of a boundary dispute. Appellants, David and Linda Ware and Robert Hattabaugh, argue that the trial judge erred in quieting title in favor of appellee, Jacquelyn Housley, and in finding that an existing fence was not the boundary by acquiescence. We agree that the trial court was clearly erroneous in finding that the fence line in this case had not become the boundary by acquiescence; therefore, we reverse and remand.[1]

Our standard of review in boundary-line cases is set forth in *Hedger Brothers Cement & Material, Inc. v. Stump,* 69 Ark. App. 219, 222, 10 S.W.3d 926, 928 (2000) (citations omitted):

> Although chancery cases are reviewed *de novo* on appeal, we will affirm a trial court's finding of fact with regard to the location of a boundary line unless the finding is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, we are left, after considering all of the evidence, with the definite and firm conviction that a mistake has been committed.

In the present case, appellee and her late husband purchased their property in 1977, and in 1980, the late Mr. Housley erected a fence without the benefit of a survey that, according to Mrs. Housley's testimony, was where Mr. Housley thought that the property line "might be." Mrs. Housley said that it was her husband's intention to build the fence on the property line. She testified that she was present at her son's deposition and heard him testify that the late Mr. Housley had treated the fence line as the property line. Mrs. Housley testified that she removed the fence after a 2002 survey she had done indicated that the fence was not the property line, but she said that for the twenty years prior to the survey, she had never used the property on the other side of the fence.

---

[1] We note that appellee argues, as an additional basis for affirming the trial court's decision in her favor, that appellants did not plead in a compulsory counterclaim the theory of boundary by acquiescence. We disagree. A review of the pleadings indicates that appellants did sufficiently plead the theory of boundary by acquiescence in their counterclaims.

Ron Daniel, who owns a portion of the property on the east side of Mrs. Housley, testified that he thought that the fence was the property line when he purchased his property in 1990. He said that he had used the land on his side of the fence exclusively for the last fourteen years and that no one had told him that they claimed it. Daniel said that all of Mr. Housley's behavior indicated that he treated the fence line as the property line, and Daniel said that he understood that the fence line was the property line not only between his property and the Housley property, but also between the Housley property and the Hattabaugh property.

David Ware, who owns the property south of the Housley property and who is one of the appellants, testified that he bought his land twenty years ago and that there was an old fence there when he purchased his property. Ware testified that although Mr. Housley never made specific statements as to what he was treating as the property line, the actions that Mr. Housley took indicated that the fence line was the property line.

During appellants' case in chief, appellant Robert Hattabaugh testified that he owned fifteen acres to the east of the Housley property, which he acquired in 1989. He stated that when he bought the property, he understood that the fence was the western boundary of his property. Hattabaugh testified that he had cut timber off all of the property, including the land in question; that he had built a pond right next to the fence line; and that he had built a "food plot" there for his animals. He also said that he had always maintained a road that ran "right up to the fence line." He said that whenever anyone needed access to the property, they came to see him, and that when the Housleys had some dozer work done, they only dozed the property on their side of the fence.

In *Hedger Brothers Cement, supra*, we set forth the requirements to establish a boundary by acquiescence:

> Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* The location of a boundary line is a question of fact. *Id.* . . . Whether a boundary line by acquiescence exists is to be determined upon the

evidence in each individual case. *Neely v. Jones*, 232 Ark. 411, 337 S.W.2d 872 (1960).

69 Ark. App. at 222-23, 10 S.W.3d at 928.

■ In *McWilliams v. Schmidt*, 76 Ark. App. 173, 181, 61 S.W.3d 898, 905 (2001), this court held:

> As we stated in *Summers v. Dietsch,* 41 Ark. App. 52, 849 S.W.2d 3 (1993), boundaries are frequently found to exist at locations other than those shown by an accurate survey of the premises in question and may be affected by the concepts of acquiescence and adverse possession. A fence, by acquiescence, may become the accepted boundary even though it is contrary to the surveyed line. *Id.* When adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence. *Id.* It is not required that there be an express agreement to treat a fence as a dividing line; such an agreement may be inferred by the actions of the parties. *Id.* Acquiescence need not occur over a specific length of time, although it must be for a long period of time. *Lammey v Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). A boundary line may be established by acquiescence whether or not it has been preceded by a dispute or uncertainty as to the boundary line. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). When a boundary line by acquiescence can be inferred from other facts presented in a particular case, a fence line, whatever its condition or location, is merely the visible means by which the acquiesced boundary line is located. *Id.* Whether a boundary line by acquiescence exists is to be determined upon the evidence in each individual case. *Hedger Bros. Cement and Materials, Inc. v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000).

In the case *Boyette v. Vogelpohl*, 92 Ark. App. 436, 214 S.W.3d 874 (2005), this court reversed the trial court's finding that appellants had not established a boundary by acquiescence and reiterated the requirements for a boundary by acquiescence, citing *Summer v. Dietsch, supra.* In *Boyette*, the appellees had possession of their property for eight years prior to taking any action regarding the fence line in question. The fence line in that case had been in existence for forty years, with the Boyette family continually claiming the property on one side and other predecessor owners claiming the property on the other side of the fence. In reversing, this court held that it was of no consequence that the fence line was

not originally erected to serve as a boundary line, but rather it was the conduct of the parties that determined whether there was a boundary by acquiescence.

In the present case, Mrs. Housley's testimony indicates that her husband believed that he placed the fence on the property line. However, even if Mr. Housley had known that he did not put the fence on the property line, all of the evidence, even Mrs. Housley's testimony, is consistent and not disputed, indicating that all of the parties treated the fence as the boundary line for over twenty years, which, according to case law, indicates that there was in fact a boundary by acquiescence, and the trial court erred in holding otherwise.

Reversed and remanded with instructions to quiet title in the appellants.

GRIFFEN, VAUGHT, and ROAF, JJ., agree.

HART and CRABTREE, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I respectfully dissent. As stated by the majority, appellee Jaquelyn Housley testified that she and her late husband acquired the property in 1977, and when her husband built the fence in 1980, he constructed the fence where he thought the property line might be. She testified further that her husband built the fence "so that he could run cattle" and that her husband "thought he put it as close to the property line as he . . . thought it was . . . but his main objective was to run cattle." Housley first learned of the actual property line when she obtained a survey on January 16, 2002. The trial exhibits show that while the fence line closely approximated the property line at the southwest and northeast corners of Housley's property, the fence line angled inside the property line on the south and east sides so that the fence's southeast corner was inside Housley's actual southeast corner.

In my view, Housley testified that, while her husband placed the fence where the boundary line might be, his main objective in building the fence was to run cattle. This testimony evidences their intent, not to claim property just to the fence line, but instead to construct a fence as close to the property line as possible in order to run their cattle. Consequently, Housley's testimony establishes that she and her husband intended to claim their property to the property line, not the fence line. Moreover, according to appellant Robert Hattabaugh, and as corroborated by appellant David Ware,

in 1999 a person working for Housley used a bulldozer and pushed trees over the fence, knocking the fence down in places. As this occurred before Housley learned of the discrepancy in 2002, it further indicates that she did not treat the fence line as the property line. In sum, there was no testimony from Housley showing that she and her husband intended the fence to be the property line, so Housley's testimony does not support a claim of boundary by acquiescence, and appellants presented testimony that supported Housley's position as well.

Accordingly, the only proof of their claims of acquiescence came from appellants. When discounted, as it was by the circuit court, there is no evidence remaining to support reversal of this case. Given the deference accorded the circuit court in determining the credibility of the witnesses and the weight to be given their testimony, we should affirm the court's finding that there was no boundary by acquiescence. *See Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004).

Furthermore, we recently restated settled law that a landowner who puts his fence inside his boundary line does not thereby lose title to the strip on the other side. *Robertson, supra.* The cases relied on by the majority do not rebut this position. Rather, the fences described in *Boyette v. Vogelpohl*, 92 Ark. App. 436, 214 S.W.3d 874 (2005), and *Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993), were not constructed by the parties who owned the property but were instead constructed by predecessors in title.

I am deeply troubled by the holding of this case, which supports the notion that a landowner, by putting up a fence, can lose title to his own property. Certainly, this case suggests that a landowner who wishes to put up a fence of convenience for such purposes as fencing in cattle must either expend funds and pay for a survey or err on the side of caution by placing the fence on his neighbor's land.

I respectfully dissent.

CRABTREE, J., joins.